## Hamill Estate

*Franklin L. Gordon,* for accountant.
*T. Dean Lower,* for exceptant.

O'DONNELL, *J.*, June 30, 1977—This decedent's estate is again before the court, this time on exceptions to the adjudication of the auditing judge, the Honorable Edwin H. Satterthwaite, Specially Presiding. James Lyon Hamill, II, died testate on April 24, 1975, having named Industrial Valley Bank and Trust Company as executor of his will.

The bank's first and partial account stated to August 31, 1976, reported gross receipts of $739,480.79. In the will, testator, after making certain specific legacies, not here material, bequeathed the balance of the estate to a residuary trust for his wife, Grace L. Hamill, for life, with remainder over to certain remaindermen. The wife—residuary life tenant—first sought the removal of the executor bank through a petition filed by her brother, an attorney. After full hearing, this court, per the Honorable Edwin H. Satterthwaite, Specially Presiding, finding no grounds for such removal, refused to remove the executor and dismissed the petition. The life tenant then, through the same counsel, filed some 20 objections (referred to as "exceptions" in the papers filed) to the bank's first and partial account. In an adjudication entered by the auditing judge, Honorable Edwin H. Satterthwaite, Specially Presiding, all of these objections, save one, were overruled. The life tenant has now filed exceptions to that adjudication, and ancillary to those exceptions, has filed a paper denominated "Petition for Hearing for Argument. Before the Full Panel of Judges." The exceptions to Judge Satterthwaite's adjudication are now scheduled for hearing before a court en banc consisting of two judges: Judge Satterthwaite, as auditing and trial judge, who conducted the hearing on the objections to the account and who, fortunately, likewise conducted the hearing on the life tenant's petition to remove the executor, and the writer of this opinion, the present judge of the Orphans' Court Division of the Court of Common Pleas of this 15th Judicial District.

The position taken in the life tenant's petition, again filed by her brother attorney-at-law, is that

there is some legal requirement that all six judges of the entire court of common pleas of this judicial district must sit together as a court en banc and further that the two judges now assigned as a court en banc should not so sit because of the possibility of a disagreement in which event, the petition avers, the writer of this opinion would not have the power to overrule Judge Satterthwaite, and thusly in some fashion the latter's adjudication would become the decree of this court.

In support of this position, the petition refers to "a discussion" in 1 Goodrich Amram 2d, §249(a)-2, and to the cases of Universal Film Exchanges, Inc. v. Viking Theatre Corp., 400 Pa. 27, 161 A. 2d 610 (1960), and Elliott v. Miller, 206 Pa. Superior Ct. 536, 214 A. 2d 351 (1965), none of which gave any support for the proposition advanced. Despite this, the basic proposition merits some discussion.

We can well believe that it would be the practice in the petitioning attorney's own district, Blair County, to have the entire court, consisting of two judges, sit as a court en banc, but the mind boggles at the thought of having the entire bench of the court of common pleas of Philadelphia County, consisting of some eighty judges, sitting as a court en banc.

In McCormick's Contested Election, 281 Pa. 281, 126 Atl. 568 (1924), which involved a contested congressional election, it was said: "9. Where a court is acting as a whole, or in banc, all the judges constituting the tribunal, or as many of them as may be available at the time, ought to sit together." And in Hanover Township School Directors, 290 Pa. 95, 137 Atl. 811 (1927), it was held that one judge, acting alone, could remove a school board, but the concurrence of a majority of

the entire court should be had for the appointment of the substituted members of the school board. To the same effect is Moritz v. Luzerne County, 283 Pa. 349, 129 Atl. 85 (1925), concerning the appointment of court interpreters, and Sterrett v. MacLean et al., 293 Pa. 557, 143 Atl. 189 (1928), regarding a salary board dispute. But there are as many and more cases such as Nunamaker v. New Alexandria Bus Co., 371 Pa. 28, 88 A. 2d 697 (1952), and Commonwealth v. Shawell, 325 Pa. 497, 191 Atl. 17 (1937), directly holding that the entire court is not necessary to form a court en banc. The apparent conflict is readily resolved, for it can readily be seen that in a disputed congressional election, or in the appointment of substitute school directors, or court interpreters, or a salary board dispute, the court is acting in its corporate capacity or as a body politic exercising for the electorate as a whole part of the latter's franchise. This is a distinction well recognized in Commonwealth v. Shawell, supra., wherein the Supreme Court said:

"The nature and character [of the duty] and the practice under the common law and related statutes must control the interpretation of the term 'court.' Is the duty of such nature as to require joint consideration by all the members of the court? . . .The appointment and removal of public officials . . .has far reaching consequences and should be exercised by all the available judges of the tribunal assembled . . .(but) there are many things in connection with the general administration of justice (that may be done by fewer members)."

More than a quarter of a century ago, when the writer of this opinion was first admitted to the bar

of this court, the entire court consisted of only two judges. At that more tranquil time, four two-week criminal jury sessions and four two-week civil sessions were held. These were sufficient at the time to dispose of all that business before the court, and there was more than adequate opportunity for the two judges, sitting together, to act as a court en banc. At the present time, the six judges maintain rotating, virtually continuous sessions for civil and criminal trials. It is not possible to assemble all six members of the court to sit together every time a court en banc is required without seriously disrupting and obstructing other business before the court, and the universal practice is for two judges to sit, constituting a court en banc.

We hold, under these circumstances, that judges already assigned and sitting on other cases or otherwise engaged in the administration of justice in this judicial district are not "reasonably available" for serving as a court en banc.

And this result is particularly true in the orphans' court division in which the single judge assigned to that division can sit alone as the court en banc: Baldwin Estate, 22 Fiduc. Rep. 56 (1971) (Erie County) affirmed per curiam: Baldwin Estate, 447 Pa. 599, 290 A. 2d 421 (1972).

The second point relates to the possibility that a two member court en banc may disagree. That is, of course, equally ill founded.

Pleading and practice in Orphans' Court conform generally to those in equity: Supreme Court Orphans' Court Rules, Rule 3.1. In equity an adjudication has the force and effect of a verdict only when approved by the court en banc: Lafean et al. v. American Caramel Co., 271 Pa. 276, 114 Atl. 622 (1921). A difference among the members of

the court en banc as a result of which there is no majority results in there being no adjudication[1]: Madlem's Appeal, 103 Pa. 584, 3 Sad. 55 (1883); Wagenhorst v. Philadelphia Life Insurance Company, 358 Pa. 55, 55 A. 2d 762 (1947); Summers v. Kramer, Controller, et al., 271 Pa. 189, 114 Atl. 525 (1921); unlike the situation in an appellate court in which there is no provision for bringing in additional members: Creamer v. Twelve Common Pleas Judges, 443 Pa. 484, 281 A. 2d 57 (1971).

In the lower courts the approved practice in the event of an even division of opinion is to bring in another judge: Nunamaker, supra.

## ORDER

And now, June 30, 1977, the instant petition is refused.

---

1. The case of Strauss's Estate, Bonowjtz's Appeal, 168 Pa. 561, 32 Atl. 98 (1895), is erroneously cited in the squib in ·Vale's Pennsylvania Digest for the converse of this proposition, but a close reading of that case shows that the Supreme Court, faced with an evenly divided lower court, proceeded to decide that case by independent review.